UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
G&G CLOSED CIRCUIT EVENTS, LLC,

              Plaintiff,

                                   **REPORT AND**
                              **RECOMMENDATION**

    - against -

                                 20 CV 4272 (AMD)(CLP)

DIANA LURIE, *et al.,*


              Defendants.
-----------------------------------------------------X

On September 11, 2020, plaintiff G&G Closed Circuit Events, LLC ("plaintiff" or

"G&G") commenced this suit against Diana Lurie, individually and d/b/a Gallis Lounge

("Gallis"), and Gallis Inc., an unknown business entity d/b/a Gallis Lounge (collectively,

"defendants"), alleging violations of 47 U.S.C. §§ 605 and 553.

On March 9, 2021, the plaintiff moved for default judgment against defendants Diana

Lurie, individually and d/b/a Gallis Lounge and against Gallis Lounge.  The motion was

subsequently referred to the undersigned by the Honorable Ann M. Donnelly to conduct an

inquest and prepare a Report and Recommendation.

For the foregoing reasons, this Court respectfully recommends that, pursuant to 47 U.S.C.

§§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii), and 605(e)(3)(B)(iii), plaintiff be awarded damages of

$7,500 from defendants.[1]

---

[1] The Court notes that although the statute authorizes an award of attorneys' fees, see 47 U.S.C. §
605(e)(3)(B)(iii), plaintiff has requested 30 days from the date of judgment to file for fees.  (Plaintiff's
Application for Default Judgment By the Court, dated January 27, 2021 ("Pl.'s App."), ECF No. 10 ¶¶ 6-
7; Plaintiff's Memorandum in Support of Application for Default Judgment, dated January 27, 2021
("Pl.'s Mem."), ECF No. 10-1 at 10-11).

FACTUAL BACKGROUND

In the Complaint, plaintiff alleges that it entered into a closed-circuit television licensing agreement with Golden Boy Promotions, LLC, which granted plaintiff the exclusive rights to commercially distribute the September 16, 2017 IBF World Middleweight Championship Fight Program between Saul Alvarez and Gennady Golovkin, including all undercard and preliminary bouts encompassed in the television broadcast of the event (the "Program"), at commercial establishments such as theaters, arenas, bars, clubs, lounges, and restaurants throughout New York. (Compl.[2] ¶ 19; Pl.'s Mem. at 1; Gagliardi Aff.[3] ¶ 3). These closed-circuit locations could only obtain access to the broadcast by entering into a contractual relationship with plaintiff. (Compl. ¶ 21; Gagliardi Aff. ¶¶ 3, 8, 9).

Plaintiff alleges that Gallis Lounge is a commercial establishment organized under the laws of the State of New York, with its principal place of business located at 834 Clarkson Avenue, Brooklyn, NY 11203. (Compl. ¶¶ 7, 8; Pl.'s Mem. at 2). Defendant Diana Lurie, identified as the Owner and Principal of Gallis Inc.,[4] is alleged to have owned and operated the Gallis Lounge, with the right and ability to supervise the activities alleged in the Complaint. (Compl. ¶ 10). Plaintiff alleges that on the night of September 16, 2017, defendant Lurie specifically directed the employees of Gallis Lounge to unlawfully intercept, receive, and broadcast the Program, or intentionally intercepted, received, and broadcast the Program herself. (Id. ¶ 14).

---

[2] Citations to "Compl." refer to plaintiff's Complaint, dated September 11, 2020, ECF No. 1.
[3] Citations to "Gagliardi Aff." refer to the Affidavit of Nicholas J. Gagliardi, President of G&G Closed Circuit Events, LLC, filed March 9, 2021, ECF No. 10-2.
[4] According to the Complaint, Diana Lurie was identified as the Principal of Gallis Inc. on the New York State Liquor Authority License for Gallis Inc. (Compl. ¶ 10).

On September 16, 2017, at approximately 8:35 p.m., Tiffani Poncedeleon, an investigator with Omni Present Investigations, employed by plaintiff, entered Gallis Lounge, where she observed the Program being broadcast to patrons of the defendant establishment. (Poncedeleon Aff.[5] at 1). Poncedeleon states that she was not required to pay a cover charge to enter the establishment. (Id.) Inside, she observed five television sets and approximately 10 patrons on the premises at the time of the broadcast. (Id. at 2). She represents that upon her arrival at 10:05 p.m., she observed the sixth round of the event between Francisco Rojo and Ryan Martin. (Id. at 1). The Rojo v. Martin bout was an undercard bout and part of the Program. (Gagliardi Aff. ¶ 7).

Plaintiff asserts that defendants were not authorized to display the Program and that showing the Program was a violation of federal law. (Compl. ¶¶ 29-34; 38-43; Gagliardi Aff. ¶ 7). Plaintiff further asserts that the Program could not be intercepted "mistakenly, innocently, or accidentally," and has detailed several ways in which the Program could be illegally intercepted. (Gagliardi Aff. ¶¶ 9, 10(A-E)).

On September 11, 2020, plaintiff commenced this action, seeking statutory damages pursuant to 47 U.S.C. §§ 553 and 605. On December 8, 2020, plaintiff served copies of the Summons and Complaint upon the defendant Diana Lurie, individually and d/b/a Gallis Lounge, by delivering a copy of the Summons, Complaint and Civil Cover sheet to Lurie, described in the affidavit of service as a 50-year-old white female with blonde hair and glasses. (Aff. of Serv.,[6] Ex. 4). Defendant Gallis Inc., s/h/a Gallis Lounge, was served on November 20, 2020, pursuant

---

[5] Citations to "Poncedeleon Aff." refer to the Affidavit of Tiffani Poncedeleon, Investigator for Plaintiff, dated September 20, 2017, and submitted as Exhibit 5 to the Declaration of Plaintiff's Counsel, Joseph P. Loughlin, in Support of Application for Default Judgment by the Court ("Loughlin Decl."), ECF No. 10-3.

[6] Citations to "Aff. of Serv." refer to the Affidavit of Service sworn to by Joseph P. F. Donovan, Process Server, attached as Ex. 4 to the Loughlin Decl.

to Section 306 of the Business Corporation Law by delivery to the Secretary of State. (ECF No. 10-3).

When defendants failed to appear or respond to the pleading, a default was entered by the Clerk of Court on January 11, 2021.  Plaintiff moved for entry of a default judgment, seeking an award of $7,500 under 47 U.S.C. § 605(c)(3)(C)(i)(II) and $22,500 under 47 U.S.C. § 605(e)(3)(C)(ii).  (Loughlin Decl. ¶ 3(d)(5)).  Plaintiff also requests pre- and post-judgment interest at the federal statutory rate.  (Id.)  Additionally, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff is entitled to costs and attorneys' fees.  Plaintiff seeks attorneys' fees and relevant costs but requests that G&G be given 30 days from the date of judgment to submit its Motion for costs and attorneys' fees."  (Id. ¶ 3(d)(7)).

## DISCUSSION

A.    Default

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process in which first a default, and then a default judgment, is entered.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case.  See id.; Fed. R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered.  See Fed. R. Civ. P. 55(a).  If the amount of damages must be ascertained in order for a default

judgment to be entered, the Court may conduct a hearing.  See Fed. R. Civ. P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95.  Here, plaintiff submitted a request for entry of default dated January 4, 2021.  The Clerk of the Court entered a default on January 11, 2021, and on March 9, 2021, the district court referred the motion for default judgment to the undersigned.

In determining whether a default judgment should be entered, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance the interest in expediting cases with the court's responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id. at 95-96.  Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply because the defendants are in default.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992); see also Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice," and ordering an inquest to determine damages).

The court possesses significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *1-2.  The greater the amount of money involved, the less

justification there may be for entering the default judgment.  See id.  Additionally, a court may

consider whether material issues of fact remain, see Pacific M. Int'l Corp. v. Raman Int'l Gems,

Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012), whether the facts alleged in the complaint state

a valid cause of action, see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981),

whether plaintiff has been substantially prejudiced by the delay involved, see Arthur F. Williams,

Inc. v. Helbig, 208 F.R.D. 41, 44-45 (E.D.N.Y. 2002), and how harsh the effect of a default

judgment might be on the defendant.  Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,

10A Federal Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

When a default judgment is entered, the defendant is deemed to have admitted all of the

well-pleaded factual allegations in the complaint pertaining to liability.  See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506

U.S. 1080 (1993); see also Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y.

1992) (gathering cases).  For the purposes of an inquest, a court accepts as true all factual

allegations in the complaint, except those claims relating to damages.  See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc.,

653 F.2d at 65.

Plaintiff alleges that the defendants violated 47 U.S.C. §§ 553(a)(1)[7] and 605(a) through

the unauthorized reception of plaintiff's satellite communications.  However, a court is not

permitted to grant damages under both statutes for a single illegal transmission.  See

International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1008-09 (2d Cir. 1993).  Rather, the

Second Circuit has stated that where a defendant is found to have violated both statutes, the court

---

[7] Section 553(a)(1) provides, in pertinent part, that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).

should award damages pursuant to Section 605.  Id. at 1009; see also Garden City Boxing Club, Inc. v. Polanco, No. 05 CV 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006), aff'd, 228 F. App'x 29, 30 (2d Cir. 2007).  Since the Court finds that plaintiff has sufficiently stated a claim for a violation of Section 605, the Court has considered plaintiff's request for damages only under Section 605, and not under Section 553.

Here, it is clear that the allegations in the Complaint establish the elements of liability necessary to state a claim under Section 605.  Section 605(a), which provides, inter alia, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person[,]" 47 U.S.C. § 605(a), has been held to apply to the interception of cable communications originating as a satellite or radio transmission.  See International Cablevision, Inc. v. Sykes, 75 F.3d 123, 131-32 (2d Cir. 1996), cert. denied, 519 U.S. 929 (1996); see also Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *4; Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01 CV 3945, 2002 WL 2022522, at *2 (E.D.N.Y. May 21, 2002); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997).  Thus defendants' alleged conduct—the unauthorized interception, receipt, and broadcast of the Program from satellite communications—violates this statute.

Moreover, it is beyond dispute that the corporate defendant, Gallis Lounge, is in default because it has not obtained counsel, and failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se.  See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring

corporations, as "artificial" entities, to appear through counsel).  Additionally, unlike those instances where courts have been hesitant to enter default judgment because there were potentially millions of dollars at stake, the amount of money involved in this case is not significant.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, in part because plaintiff's damages request ran "well into the millions of dollars," and giving defendant an opportunity to contest the entry of default).

Accordingly, the Court respectfully recommends that the District Court grant plaintiff's motion for entry of a default judgment.

## C.    Damages

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment.  Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.  Rather, plaintiff must establish its entitlement to recovery "in an evidentiary proceeding in which the defendant has the opportunity to contest the amount."  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  While "the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989).  Here, the Court has made its determination after reviewing plaintiff's affidavits and exhibits pertaining to the damages incurred.

### 1.    Statutory Damages

Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect statutory or actual damages.  47 U.S.C. § 605(e)(3)(C)(i).  In this instance, plaintiff has elected to

recover statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).  (Pl.'s Mem. at 4; <u>see</u> Gagliardi Aff. ¶ 14).[8]

Section 605 provides for penalties "for <u>each</u> violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just."  47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added).  Although Section 605 requires the court to assess damages based on each "violation" of the statute, there is no statutory definition of "violation."  <u>See</u> <u>Garden City Boxing Club, Inc. v. Rosado</u>, No. 05 CV 1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005).  Moreover, in cases such as this, involving the theft of services by a commercial establishment, it is often difficult to assess a precise figure.  However, most cases applying this statute in a commercial context have interpreted the showing of a single event on a single night as one violation.  <u>See, e.g.</u>, <u>id.</u>; <u>Time Warner Cable of New York City v. Taco Rapido Rest.</u>, 988 F. Supp. at 111.

In determining the amount of damages that may be imposed for each violation within the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the sound discretion of the court.  <u>See</u> 47 U.S.C. § 605(e)(3)(C)(i)(II); <u>see also</u> <u>Home Box Office v. Champs of New Haven, Inc.</u>, 837 F. Supp. 480, 484 (D. Conn. 1993) (reducing an award from $250,000 to $10,000 for commercial broadcast of a boxing match); <u>Time Warner Cable v. Taco Rapido Rest.</u>, 988 F. Supp. at 111 (citing cases).  The factors to be considered in determining the appropriate amount of damages include the "'pecuniary loss sustained by the victim as a result of

---

[8] As noted above, <u>see</u> discussion <u>supra</u> at 7, a plaintiff may only recover damages under one statute when there is a single illegal transmission.  <u>See</u> <u>International Cablevision, Inc. v. Sykes</u>, 997 F.2d at 1009.  Therefore, in accordance with Second Circuit precedent, the Court recommends that plaintiff receive an award of damages pursuant to Section 605.  <u>Id.</u>; <u>see also</u> <u>Garden City Boxing Club, Inc. v. Polanco</u>, 2006 WL 305458, at *5.

the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose.'"  Cablevision Sys. Corp. v. De Palma, No. 87 CV 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (interpreting 47 U.S.C. § 553)); see also J & J Sports Productions, Inc. v. Mangos Steakhouse & Bakery, No. 13 CV 5068, 2014 WL 2879868, at *6 (E.D.N.Y. May 7, 2014); Entertainment by J & J, Inc. v. Ramsarran, No. 01 CV 5223, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002).

In calculating lost profits, some courts have awarded a flat damage amount when considering the unauthorized receipt and broadcast of a cable program by a commercial establishment.  See, e.g., Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 CV 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (awarding statutory minimum where plaintiff failed to establish any actual damages because plaintiff did not submit evidence of the cost of the license fee for defendants to broadcast the boxing event legally); Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding flat damage amount "based on the Court's view of the equities and not the estimate of the number of patrons"); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. at 484 (awarding statutory damages of $10,000 where it found the statutory maximum of $250,000 to be excessive).

Other courts have assessed damages based on the number of patrons in the commercial establishment during the broadcast.  See, e.g., Garden City Boxing Club v. Rosado, 2005 WL 3018704, at *3-4 (multiplying the number of patrons present at the unauthorized broadcast by the residential charge for the pay-per-view event being shown, $54.95); Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *4-5 (E.D.N.Y. Mar. 28, 2003) (awarding

$50 per patron); <u>Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc.</u>, 2002 WL 2022522, at *3 (same); <u>Time Warner Cable of New York City v. Googies Luncheonette, Inc.</u>, 77 F. Supp. 2d 485, 489-90 (S.D.N.Y. 1999) (same); <u>Time Warner Cable of New York City v. Taco Rapido Rest.</u>, 988 F. Supp. at 111 (same); <u>Cablevision Sys. Corp. v. 45 Midland Enters., Inc.</u>, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).

In this case, plaintiff argues that neither approach adequately compensates plaintiff for its losses and, instead, seeks $7,500 in statutory fees.  Plaintiff explains that this amount is three times the sublicensing fee of $2,500, which plaintiff would have received had defendants entered into a contract with plaintiff to broadcast the Program.  (Pl.'s Mem. at 8; Gagliardi Aff. ¶ 8, Ex. 2).  Plaintiff contends that neither of the two typical methods of calculating damages should be used in this case, and that the Court should instead award a higher amount, because such an award would create a "perverse incentive for an individual to attempt to break the law."  (Pl.'s Mem. at 8-9). Plaintiff asserts more specifically that signal piracy causes a reduction in its lawful business because of the "perceived lack of significant consequences" for such behavior. (Gagliardi Aff. ¶¶ 12, 13).  Plaintiff claims that its business suffers because of signal piracy, which imposes costs on the company, its customers, and their communities.  (<u>Id.</u> ¶ 12).  Further, plaintiff argues that there is a "reasonable presumption" that defendants obtained additional profits as a result of the illegal showing of the Program.  (<u>Id.</u> ¶ 17; Pl.'s Mem. at 7-8).


2.    <u>Application</u>

Where there is uncontradicted evidence of the number of patrons viewing an unauthorized program in an establishment, some courts have calculated the award of damages by multiplying the individual residential rate to receive the transmission by the number of patrons

present and adding to this any other cover charges and profits that can be attributed to the
unauthorized viewing.  J & J Sports Prods., Inc. v. LDG Williams, LLC, No. 11 CV 2145, 2011
WL 5402031, at *3 (E.D.N.Y. Jul. 27, 2018); see also J & J Sports Prods., Inc. v. Arhin, No. 07
CV 2875, 2009 WL 1044500, at *1 (E.D.N.Y. April 17, 2009).  However, that amount fails to
approach the actual lost revenues to plaintiff.  Plaintiff has stated that lost revenues in this case
equal $2,500, based on the fee that would normally be charged to a commercial establishment
with a capacity of 1-100 persons.  (Pl.'s Mem. at 8; Gagliardi Aff., Ex. 2).

Awarding the plaintiff $2,500 in lost revenues constitutes an award greater than the
statutory minimum of $1,000.  See 47 U.S.C. § 605(e)(3)(C)(ii); Kingvision Pay-Per-View Ltd.
v. Autar, 426 F. Supp. 2d 59, 63-64 (E.D.N.Y. 2006) (awarding $1,000 where multiplying the
number of patrons by $50 would lead to a total less than the statutory minimum); see also J & J
Sports Prods., Inc. v. LGD Williams, LLC, 2011 WL 5402031, at *4 (explaining that "courts use
per-patron calculations as a 'starting point' for calculating damages . . . rather than as an
exhaustive analysis where the sum of per-patron damages is less than the fee that an
establishment would have paid for a sublicense to broadcast the event") (citations omitted).
Other courts in this district have calculated damages by multiplying the residential rate by the
number of patrons present, and then adding that amount to the licensing fee.  See, e.g., J & J
Sports Prods., Inc. v. The Afrikan Poetry Theatre, Inc., No. 17 CV 2196, 2018 WL 1725692
(E.D.N.Y. Apr. 10, 2018).  However, the plaintiff did not provide the court with the residential
rate in this case, asserting that "as this is a default case, Plaintiff cannot calculate the profits for
the Defendant."  (Pl.'s Mem. at 8).

Plaintiff cites a variety of cases outside this district and circuit where courts have used
plaintiff's proposed method of awarding damages equal to three times the relevant licensing fee.

See, e.g., J & J Sports Prods., Inc. v. Tonita Rest., LLC, No. 13 CV 0382, 2015 WL 9462975 (E.D. Ky. Dec. 28, 2015); Joe Hand Promotions, Inc. v. Sheedy, No. 08 CV 1797, 2011 WL 4089534 (D.S.C. July 29, 2011).  As plaintiff noted, however, courts in the Second Circuit routinely limit statutory damages to the sublicensing fee, here $2,500.  (Pl.'s Mem. at 8). Although the Court has reviewed the out-of-circuit cases that plaintiff cites, the Court respectfully recommends that the District Court apply the methodology typically used to calculate statutory damages in the Second Circuit, which would result in an award of $2,500 in statutory damages.

3.    Enhanced Damages for Willfulness

Plaintiff also seeks enhanced statutory damages pursuant to Sections 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii), providing for additional awards of up to a maximum of $100,000 for all willful violations.  (Pl.'s Mem. at 9-10).  The statute permits enhanced damages where the violation was committed willfully and for financial gain.  See, e.g., Entertainment by J & J, Inc. v. Ramsarran, 2002 WL 720480, at *2 (awarding statutory damages of $5,000, increased by $10,000 for willfulness under 47 U.S.C. § 605(e)(3)(C)(ii), where defendant displayed a boxing match to eighteen patrons in his bar); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111-12 (awarding statutory damages of $3,750, increased by $5,000 for willfulness under section 605(e)(3)(C)(ii), where defendant displayed a boxing match to seventy-five people inside and twenty people outside his restaurant).  This section clearly applies to persons or entities that operate commercial establishments such as bars, taverns, and restaurants that exhibit unauthorized programming to their patrons.  See id.

In determining whether an enhanced award for willful conduct is warranted, some precedents suggest that the simple fact that the Program was intercepted and broadcast without permission is an indication of willfulness.  See, e.g., J & J Sports Prods., Inc. v. Big Daddy's Theme Palace, No. 14 CV 2765, 2015 WL 58606, at *4 (E.D.N.Y. Jan. 5, 2015); J & J Sports Prods., Inc. v. Nest Restaurant & Bar, Inc., No. 17 CV 2194, 2018 WL 4921657, at *8 (E.D.N.Y. July 17, 2018).  Willful behavior under the statute has been interpreted to include "'disregard for the governing statute and an indifference for its requirements.'"  ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985) (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)).  Courts also consider five factors to determine whether willful conduct warrants an award of enhanced damages: "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks."  J & J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15 CV 6505, 2016 WL 6905946, at *5 (E.D.N.Y. Nov. 23, 2016) (citations and internal quotation marks omitted).

In determining the enhanced damages for willful conduct, courts take varying approaches.  Some courts have awarded treble damages for willful violations.  See, e.g., J & J Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *3 (E.D.N.Y. Apr. 27, 2010) (awarding plaintiff an enhancement of three times the statutory damages award of $2,747.50, or $8,242.50, for willfulness, for a total award of $10,990); J & J Sports Productions, Inc. v. Benson, 2007 WL 951872, at *5 (awarding statutory damages of $1,200, plus enhanced damages of $3,600, for a total of $4,800 where plaintiff did not advertise the event, charged no cover, and five patrons were present); J & J Sports Prods., Inc. v. Forbes, No. 07 CV 4394, 2008

WL 5263732, at *1 (E.D.N.Y. Dec. 17, 2008) (awarding $1,000 in statutory damages and $3,000 in enhanced statutory damages for willfulness, for a total of $4,000.00); J & J Sports Prods., Inc. v. Drake, No. 06 CV 246, 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006) (same).

Other courts have doubled the statutory damage award to arrive at enhanced damages. See, e.g., J & J Sports Prods., Inc. v. Onyx Dreams, Inc., No. 12 CV 5355, 2013 WL 6192546, at *6-7 (E.D.N.Y. Nov. 26, 2013) (awarding enhanced damages of $9,011.80, or two times the statutory damages of $4,505.90, for a total of $13,517.70, where plaintiff was not paid a licensing fee and defendant charged a cover fee of $20); Joe Hand Promotions, Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *8 (E.D.N.Y. May 29, 2013) (awarding $1,538.60 in statutory damages plus two times that, $3,077.20 in enhanced damages, for a total award of $4,615.80); Garden City Boxing Club, Inc. v. 135 Hunt Station Billiard, Inc., No. 07 CV 3849, 2012 WL 4328355, at *5 (E.D.N.Y. June 21, 2012) (awarding $4,396.00 in enhanced damages, plus statutory damages of $2,198.00, where violations were willful but there was no evidence of past or future violations), report and recommendation adopted, 2012 WL 4328347 (E.D.N.Y. Sept. 19, 2012); J & J Sports Prods., Inc. v. Tellez, 2011 WL 6371521, at *6 (E.D.N.Y. Dec. 20, 2011) (awarding $4,670.75 in statutory damages plus two times that amount or $9,341.50, representing enhanced damages where plaintiff showed no evidence of prior violations and where the revenues defendant earned were unclear).

Still other courts have awarded enhanced damages in an amount equal to that awarded for statutory damages. See, e.g., J & J Sports Prods. Inc. v. Orellana, 2019 WL 1177719, at *7 (awarding statutory damages of $3,000 and enhanced damages of $3,000); J & J Sports Prods. Inc. v. Johnny's Restaurant, Bar & Lounge Inc., 2016 WL 8254906, at *7 (E.D.N.Y. Dec. 15, 2016) (awarding damages of $3,297 and enhanced damages of $3,297); J & J Sports Prods., Inc.

v. LDG Williams, LLC, 2011 WL 5402031, at *1 (awarding statutory damages of $2,534.15 and enhanced damages of $2,534.15 for willfulness); Entertainment by J & J, Inc. v. Friends II, Inc., No. 02 CV 585, 2003 WL 1990414, at *4 (S.D.N.Y. Apr. 25, 2003) (awarding statutory damages of $2,500 and enhanced damages of $2,500); Entertainment by J & J Inc. v. Nina's Rest. & Catering, No. 01 CV 5483, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002) (same).

Finally, courts occasionally refuse to award enhancements. See, e.g., J & J Sports Prods., Inc. v. Martinez, No. 07 CV 3455, 2009 WL 1913239, at *2 (E.D.N.Y. June 30, 2009) (awarding $3,000 in statutory damages and zero enhanced damages for an establishment with 40 patrons where plaintiff failed to show "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [or] defendant's charging a cover charge or charging premiums for food and drinks" (internal quotation marks and citation omitted)); J & J Sports Prods., Inc. v. Monte Limar Sports Bar, No. 15 CV 3771, 2017 WL 933079, at *5 (E.D.N.Y March 8, 2017) (awarding $2,200 in statutory damages and zero in enhanced damages because, although there were 100 patrons present, the court found no evidence of significant profit or commercial advantage); J & J Sports Productions, Inc. v. LX Food Grocery, Inc., 2016 WL 6905946, at *5 (awarding $2,200 in statutory damages and zero in enhanced damages where the auditor observed five patrons in the Establishment and the court found no evidence of commercial benefit); J&J Sports Prods., Inc. v. Louisias, No. 06 CV 339, 2006 WL 1662608, at *5-6 (E.D.N.Y. May 16, 2006) (awarding $2,500 statutory damages and zero enhanced damages for a barbershop in which five patrons were present because there was no evidence that defendants exhibited the Event for commercial advantage).

Plaintiff alleges that defendants intercepted and broadcast the Program without entering into a licensing agreement with plaintiff or paying fees to plaintiff. To accomplish this, defendants could have utilized an unauthorized decoder, illegally transferred an authorized decoder to the location, illegally altered cable service to bring the signal to the defendant's establishment or misrepresented the commercial establishment as a residential property to allow purchase of the Program at the residential price. (See Gagliardi Aff. ¶ 10). The defendants then broadcast the Program to their patrons.

While plaintiff's allegations support a finding that defendants' conduct was willful, and plaintiff has alleged that signal piracy has resulted in losses in its revenue, plaintiff has failed to allege the amount of its losses. Although plaintiff has not alleged that defendants have repeatedly violated the statute, nor is there any evidence that a cover charge was collected, the investigator observed 10 patrons present at the time that defendants broadcast the Program. Given the nature of the establishment and the number of patrons present, some of whom presumably consumed food or beverages, it is likely that defendants profited from the presence of patrons who were there to observe the Program. To the extent that defendants' failure to pay for a license constitutes "actual damages," that cost is already factored into plaintiff's statutory damages award. However, that amount alone does not compensate plaintiff for the loss of good will among the other establishments which paid the licensing fee to display the Program legally. Given plaintiff's undisputed allegations in support of a finding that the defendants had to have acted willfully in using some unlawful means to intercept the Program, the Court respectfully recommends an additional award of $5,000.[9]

---

[9] One court in this district has noted that it is conceivable that a small business owner could accidentally sign up for residential cable service, or that an error on the part of a cable service provider could lead to a business being improperly categorized as a residence, thereby bringing into question whether or not a defendant willingly committed the violation. See J & J Sports Prod., Inc. v. Louisias,

This amount is in line with previous awards made by courts in the Eastern and Southern

Districts of New York. See, e.g., J & J Sports Prods., Inc. v. Onyx Dreams, Inc., 2013 WL

6192546, at *6-7 (awarding enhanced damages of $9,011.80, or two times the statutory damages

of $4,505.90, for a total of $13,517.70); Joe Hand Promotions, Inc. v. Elmore, 2013 WL

2352855, at *8 (awarding $1,538.60 in statutory damages plus two times that, $3,077.20 in

enhanced damages, for a total award of $4,615.80); Garden City Boxing Club, Inc. v. 135 Hunt

Station Billiard, Inc., 2012 WL 4328355, at *5 (awarding $4,396.00 in enhanced damages, plus

statutory damages of $2,198.00); J & J Sports Prods., Inc. v. Tellez, 2011 WL 6371521, at *6

(awarding $4,670.75 in statutory damages plus two times that amount, or $9,341.50, representing

enhanced damages).

Accordingly, the Court respectfully recommends that the district court approve the total

recommended statutory and enhanced damages of $7,500 as sufficient to compensate plaintiff

and to deter future illegal conduct on the part of defendants.


4.    Interest

Although plaintiff seeks prejudgment interest, section 605 does not provide for

prejudgment interest.  See generally, 47 U.S.C. § 605.  Courts in this district have recognized,

however, that pre-judgment interest "may be permitted in the absence of express statutory

authorization" when the award of interest is "necessary to compensate the wronged party fully."

Garden City Boxing Club, Inc. v. Rojas, 05 CV 1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov.

21, 2006) (citing Wickham Contracting Co., Inc. v. Local Union No. 3, IBEW, 955 F.2d 831,

836 (2d Cir.), cert. denied, 506 U.S. 946 (1992)).  Ultimately, "[t]he decision whether to grant

---

2006 WL 1662608, at *4.  However, given that in this case defendant has defaulted, this Court declines to speculate as to potential excuses for what appears to be a willful interception of the Program.

prejudgment interest and the rate used if such interest is granted 'are matters confided to the district court's broad discretion.'"  Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1071 (2d Cir.1995) (quoting Commercial Union Assurance Co. v. Milken, 17 F.3d 608, 613–14 (2d Cir. 1994), cert. denied, 513 U.S. 873 (1994)).

Most courts to have considered whether to award prejudgment interest in similar cases have refused to do so on the grounds that "statutory damages under the Communications Act are analogous to punitive damages in that they are designed to deter others from similar infringing activity."  J & J Sports Prods., Inc. v. Hot Shots, Inc., 2010 WL 3522809, at *3 (internal quotation marks and corrections omitted) (collecting cases); See also, J & J Sports Prods., Inc. v. Potions Bar & Lounge, Inc., 08 CV 1825, 2009 WL 763624, at *8 (E.D.N.Y. Mar. 23, 2009) (holding that "because plaintiff is receiving punitive damages in addition to statutory damages, awarding pre-judgment interest is not necessary").  The award described above, which includes statutory and enhanced damages, adequately compensates plaintiff for the alleged harm, and therefore the Court sees no reason to depart from this precedent here.

Accordingly, I respectfully recommend that the District Court deny plaintiff's request for prejudgment interest.  However, plaintiff is, of course, entitled to post-judgment interest under 28 U.S.C. § 1961(a), if any should accrue after the entry of judgment.

D.    Plaintiff's Attorneys' Fees and Costs

Pursuant to Section 605(e)(3)(B)(iii), plaintiff is also entitled to costs and reasonable attorneys' fees.  See 47 U.S.C. § 605(e)(3)(B)(iii) (stating that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails"); see also Int'l Cablevision v. Sykes, 997 F.2d at 1009.  Plaintiff requests "that it be granted 30

days from the date the judgment becomes final to submit its Motion for costs and attorneys'

fees." (Pl.'s Mem. at 10-11). This practice of submitting a motion for fees and costs following

an order of a district court has been accepted in this district before. See J & J Sports

Productions, Inc. v. Reynolds, No. 18 CV 2540, 2019 WL 1299408, (E.D.N.Y. Jan. 11, 2019),

report and recommendation adopted, 2019 WL 1299665 (E.D.N.Y. Mar. 21, 2019)

(recommending that plaintiff be permitted to file a separate motion with attorneys' fees and costs

within 30 days after the district judge's order on the report and recommendation); J & J Sports

Productions, Inc. v. Guncay, No. 18 CV 2097, 2018 WL 6313210, at *5 (E.D.N.Y. Oct. 17,

2018), report and recommendation adopted, 2018 WL 6308773 (Dec. 3, 2018) (same); J & J

Sports Productions, Inc. v. Brown, No. 18 CV 2489, 2019 WL 612225 (E.D.N.Y. Jan. 10, 2019),

report and recommendation adopted, 2019 WL 591544 (E.D.N.Y. Feb. 13, 2019) (same).

The Court therefore respectfully recommends that plaintiff be permitted to submit a

motion for attorney's fees, including an affidavit and contemporaneous time records establishing

the amount of attorney's fees and costs it seeks to recover, 30 days from the date this Report and

Recommendation is ruled upon. See J & J Sports Productions, Inc. v. Alvarez, No. 07 CV 8852,

2009 WL 3096074, at *7 (S.D.N.Y. Sept. 25, 2009) (declining to award plaintiff attorney's fees

because of the failure to keep contemporaneous time records); New York State Ass'n for

Retarded Child., Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983) (holding that

"contemporaneous time records are a prerequisite for attorney's fees in this Circuit").


CONCLUSION

Accordingly, this Court respectfully recommends that plaintiff be awarded $7,500 in

statutory and enhanced damages from defendants Gallis Lounge and Diana Lurie, and that

plaintiff be permitted to submit a motion for attorneys' fees 30 days from the date that this

Report and Recommendation is ruled upon.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.

Failure to file objections within the specified time waives the right to appeal the District Court's

order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onandaga Cty., 517

F.3d 601, 604 (2d Cir. 2008).

Plaintiff shall serve a copy of this Report and Recommendation on the defendants and file

proof of such service on the record within two weeks of the date of this Report.


**SO ORDERED**.

Dated: Brooklyn, New York
       December 10, 2021

                                        /s/ Cheryl L. Pollak
                                        Cheryl L. Pollak
                                        Chief United States Magistrate Judge
                                        Eastern District of New York